# NELS J. BENSON v. HYGIENIC ARTIFICIAL ICE COMPANY AND ANOTHER.[1]

November 6, 1936.

No. 30,968.

*Ernest F. Jacobson,* for relator.
*P. C. Reynolds,* for respondents.

I. M. OLSEN, JUSTICE.

Proceedings by Nels J. Benson, relator, against Hygienic Artificial Ice Company and its insurer, respondents, to recover compensation for injuries claimed to have been received by him as an employe of respondent ice company and arising out of and in the course of his employment. The findings of the referee before whom the matter was heard were that at the time of the accident causing the

[1]Reported in 269 N. W. 460.

injuries relator was employed under a Minnesota contract of hire as treasurer of the Hygienic Artificial Ice Company at a weekly wage of $17.30, but the referee found that the accidental injuries suffered did not arise out of and in the course of relator's employment. The referee accordingly disallowed compensation. The industrial commission, on appeal, approved and adopted the findings of the referee and affirmed the order of the referee denying compensation.

■ One of the duties of the relator as the treasurer of the ice company was to deposit in the bank the checks and money taken in by the corporation. He had a car and drove from the plant to the bank to make such deposits. The company paid him some compensation for his use of the car in making these trips to the bank and back. The company paid the relator a salary of $75 a month for his services as treasurer thereof. He was also vice-president of the company, a member of its executive committee, and a director. He held only one share of the capital stock of the corporation, which he called a qualifying share. The bank in which he customarily made deposits was located at the corner of East Hennepin avenue and Fourth street northeast, Minneapolis. Hennepin avenue is the dividing line between northeast and southeast Minneapolis. The plant of the company is located at 1815 Third street northeast, one block from University avenue, a considerable distance from the bank. On the day of the accident, about noon, the relator, accompanied by his daughter, drove in the car from the plant to the bank, and relator there deposited the funds of the company in his hands. He had with him the bankbook and a small canvas bag in which he carried the funds. He came out of the bank, entered his car, and proceeded on to Central avenue a short distance to where the accident happened. Central avenue, in the direction in which he was traveling, leads to the Third avenue bridge and thence into the main business section of Minneapolis. It crosses University avenue before reaching the bridge, and the accident happened a short distance before the relator had reached the intersection of the two streets. He testified that he intended to return to the plant and intended to turn onto University avenue and proceed

along that avenue back to the plant. He further testified that this was one of his regular routes from the bank back to the company's plant. The evidence on which the referee apparently found that the accident and injury suffered did not arise out of and during the course of relator's employment is the following: Some five weeks after the accident and while relator was still in the hospital he gave to the representative of the insurer a written statement. In that statement he said, among other things:

"We had planned to eat at Cole's Cafe so we started to go there [referring to the start made before the accident]: * * * I generally go to the bank on Saturday mornings as the bank closes at 1:00 o'clock P. M. Then I am thru for the day unless we are very busy. This day * * * I was going from the bank to the cafe to eat my noon meal, when my accident occurred."

Later, about two months after the accident, relator wrote a letter to the industrial commission in which he used the following language:

"I made the deposit at the First National Bank, St. Anthony Falls Office at E. Hennepin and 4th St. I then got into the car and as it was my lunch time, we started to go down-town for lunch."

This Cole's Cafe referred to is across the river from the bank and is in the main business section of the city of Minneapolis. Central avenue would be the most direct route to take if relator were going to that cafe.

If the relator was, at the time of the accident, an employe of the ice company, the question whether the accident and injury arose out of and in the course of his employment was a question of fact to be determined by the referee and the industrial commission, and their finding thereon will not be disturbed here if, from the evidence and the reasonable inferences to be drawn therefrom, the referee and commission could reach the conclusion arrived at. We do not disturb findings of fact in these cases unless the evidence is clearly insufficient to sustain them. The finding on this issue is not so lacking in support in the evidence as to require that it be set aside.

■ Respondents present the further claim that the relator was not an employe of the ice company. He was, as already noted, a stockholder, vice-president, and member of the executive committee of the corporation. He was also one of the directors. He was paid, not a workman's wages, but a monthly salary, as treasurer. He was paid, in addition thereto, some small amount for expenses for the use of his car in performing his official duties. He held only one share of stock. This corporation was owned and controlled by two other corporations engaged in the general ice business but was operated separately. There is no evidence that any officer of the respondent owned any more stock than relator, or as to the amount of stock issued by the corporation. It is apparent that the two other corporations, referred to as the parent corporations, owned the bulk of the stock of this subsidiary. The evidence is conclusive that relator performed no work or services other than such as were part of his official duties as treasurer, vice-president, director, and member of the executive committee. He owned 100 shares of stock in one of the parent companies and was a director thereof. He had no fixed hours of employment. He came when he pleased and left when he pleased. His duties as treasurer consisted of having charge of the funds of the corporation and of its deposits and bank account, checking up on receipts and disbursements and other financial matters, signing checks and documents, and, we assume, supervising the books in which accounts were kept. He does not testify that he kept the books himself. There was a bookkeeper. Apparently relator's duties did not occupy all his time. He was not hired as an employe, but elected as an officer in whatever manner officers were elected in this corporation. He was not paid workman's wages, but was paid a small monthly salary. He was 75 years of age. He has continued as treasurer and officer of the corporation since the accident and has received the same salary as before. While he has not fully recovered from the injury, a broken hip, he is able to and does perform at least part of his duties as treasurer. The evidence fails to show that he was an employe. There are two cases in this court which have a bearing on this question—Donaldson v. William H. B. Donaldson Co. 176 Minn. 422, 223 N. W. 772,

and Erickson v. Erickson Furniture Co. 179 Minn. 304, 229 N. W. 101. In the opinion in the Erickson case this court said [179 Minn. 306]:

"The claimant in the present case endeavored to show that the facts differed from the facts in the Donaldson case, and stresses the fact that executive control of the company was not exercised by Gustaf Erickson but by Richard. While the fact that Donaldson was in executive control of his company and that no one could discharge him were mentioned as circumstances in that case, they were not essential to the decision, which was based on the ground that there was no evidence on which the finding that he was an employe as defined in the compensation law could be sustained. For that reason the decision of the commission was reversed. In the present case the evidence will not justify a finding that Gustaf Erickson was an employe within the meaning of the compensation act. 'Under that statute, only those are employes who "perform a service for hire" and to whom some "employer directly pays wages." ' Supornick v. Supornick, 175 Minn. 579, 582, 222 N. W. 275, 277; G. S. 1923 (1 Mason, 1927) § 4326. Under the facts of this case, it cannot be said that Gustaf Erickson was hired as a workman by the corporation or was directly paid wages by it. That an officer of a corporation may also be an employe within the meaning of the compensation law is sustained by the authorities, but only where he performs services and receives pay therefor in the capacity of an employe."

The rules so stated are applicable here. We hold that as a matter of law, on the evidence here presented, the relator was not an employe of the respondent company.

It may be claimed that question was not raised by the relator on *certiorari*. It is, however, raised by respondents in their brief and argument. By the statute, 1 Mason Minn. St. 1927, § 4321, this court is granted original jurisdiction in these cases and "may reverse, affirm or modify the award or order of disallowance reviewed and enter such judgment as may be just and proper; and where necessary, may remand the cause to the Industrial Commission for

a new hearing or for further proceedings, with such directions as the court may deem proper."

Findings of fact by the industrial commission will not be disturbed unless consideration of the evidence and permissible inferences therefrom clearly require contrary conclusions. Here there is no dispute as to the character and kind of service performed or as to the relation of the relator to the respondent company, and it becomes our duty to declare what law governs as to whether relator was an employe within the workmen's compensation law.

The finding of the referee and industrial commission that relator was at the time of his injury an employe of the respondent company is reversed, and the order of the referee and commission denying compensation is affirmed.

Affirmed.