**HOME MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Delbert THALMAN, individually and as father and natural guardian of Matthew Thalman, a minor, Lyle Hovde, individually and as guardian ad litem for Benjamin Hovde, a minor, Lowell Dreyer, et al., Respondents.**

No. C1–85–1760.

Court of Appeals of Minnesota.

May 20, 1986.

Review Denied June 30, 1986.

Steven L. Marquart, Moorhead, for Home Mut. Ins. Co.

Roderick B. McLarnan, Moorhead, for Delbert Thalman.

H. Morrison Kershner, Fergus Falls, for Lyle Hovde.

Thomas C. Athens, Fergus Falls, for Lowell Dreyer, et al.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from judgment entered in favor of respondents. The trial court determined that respondent Delbert Thalman was not excluded from coverage under an insurance policy he held with appellant Home Mutual Insurance Company for injuries sustained by his son's friend on farm property owned by Thalman's neighbor. We affirm.

### Facts

In 1972 Delbert Thalman entered into an agreement with Dreyer Brother Farms to irrigate land owned by Lowell Dreyer. Water for the irrigation system came from a well located on Thalman's property and

was piped to equipment which could be moved back and forth between his and Dreyer's property.

When the arrangement began, there was no dirt road between their two fields. A road was created as a result of dragging the irrigation equipment to positions on each other's property. The road also served as access for Lowell Dreyer and his family to a county roadway that ran along the southern boundary of Thalman's property. Before the 1972 agreement the Dreyers used a township road to connect with the county road. The township road interfered, however, with the well Thalman installed for the irrigation system so Thalman and Dreyer agreed, with the township's permission, to close the road. In return for his agreement to close the road, Dreyer was granted an easement by Thalman to use that portion of the dirt road which ran across his property.

Thalman continued his transport of the irrigation system between farms until 1980 when he purchased additional equipment which could be stationed on both his and Dreyer's property. Although no longer necessary to shuttle equipment back and forth, Thalman still serviced and operated the irrigation system because water supplied by him could only be used at one stationary location at a time and it was necessary for someone to switch the water supply during the day. Thalman received five thousand dollars a year from Dreyer Brothers for providing the water and servicing the irrigation equipment.

In 1981 Thalman purchased a Honda ATC three-wheeler that was used at least 50% of the time for farm work and occasionally by his twelve year old son Matthew to check the irrigation system. Matthew would use the dirt road which ran between the two properties to reach the irrigation outlets on both his father's and Dreyer's property.

On July 22, 1983, Matthew was driving the three-wheeler on the road on the farm of Lowell Dreyer when it collided with Dreyer's pickup truck and Benjamin Hovde, a passenger on the three-wheeler, sustained severe injuries.

At the time of the accident, Matthew was not using the three-wheeler to check the irrigation equipment but rather was using it to drive himself and Benjamin to a lake which borders both the Thalman and Dreyer properties.

Hovde brought suit against Lowell Dreyer and his business Dreyer Brother Farms. Dreyer in turn impleaded the Thalmans for contribution and/or indemnity.

Delbert Thalman sought coverage for the accident under a farm liability policy issued to him by Home Mutual Insurance Company (Home Mutual). Home Mutual declined coverage, claiming that the accident had occurred away from Thalman's insured premises and thus fit within a specified exclusion in the policy. It commenced a declaratory judgment action seeking judicial determination of the coverage dispute.

The relevant exclusions in Thalman's insurance policy provide:

Under Personal Liability Coverage ... we do not cover:

1. Bodily injury or property damage arising out of the ownership, maintenance or use of:

\*　　\*　　\*　　\*　　\*　　\*

(b) land motor vehicles designed for use on public roads, other than a recreational motor vehicle, owned or operated by or rented or loaned to an insured person.

We do provide coverage if the land motor vehicle is not subject to motor vehicle registration because it is:

(1) used exclusively on the insured premises; or

(2) kept in dead storage on the insured premises.

\*　　\*　　\*　　\*　　\*　　\*

(c) recreational land motor vehicle, other than golf carts while used for golfing, owned by an insured person, if the bodily injury or property damage occurs away from the insured premises;

\*　　\*　　\*　　\*　　\*　　\*

The term "insured premises" is defined elsewhere in the policy as follows:

9. "Insured premises" means:

(a) the insured farm locations and residence premises described in the Declarations.

Under Section 11—Personal Liability Protection, "insured premises" also means:

(b) any other premises acquired by you during the term of this policy which you intend to use as a residence premises or farm;

\*     \*     \*     \*     \*     \*

The trial court found that Thalman was not excluded from coverage because (1) The accident occurred on property in which Thalman had an implied license to use, therefore, it was property acquired by Thalman as part of his farm and was included within coverage and (2) Thalman could reasonably expect that his insurance policy would cover the three-wheeler and any activities occurring on the dirt road which ran between his and Dreyer's property.

### Issue

Did the accident occur on premises acquired by Thalman as part of the insured farm so as to fit within coverage under his farm liability policy?

### ANALYSIS

1. Home Mutual argues that exclusion (c) in Thalman's policy excludes him from coverage because the accident occurred away from the "insured premises." [1]

The trial court found coverage based on the definition of "insured premises" in paragraph 9(b), concluding that Thalman's implied license in the dirt field road was premises acquired by him as part of his farm.

Thalman did not have either legal title to the dirt road or an express license from Dreyer to use it. Thalman argued and the trial court agreed, however, that he did have an implied license to use that portion of the road located on Dreyer's property to initially transport irrigation equipment and thereafter to service, inspect and operate the equipment. Included in the agreement between him and Dreyer to irrigate both properties was the implied consent by Dreyer to use the road in order to maintain the system.

Home Mutual maintains that Thalman only had the implied permission from Dreyer to use that portion of the dirt road located on Dreyer's property to check the irrigation equipment. If the license is used for a purpose distinct from that specifically granted, it is no longer available and any entrance on the land could be considered a trespass. *See State v. Quinnel*, 277 Minn. 63, 67, 151 N.W.2d 598, 602 (1967). Here the accident occurred not while Matthew was checking the irrigation system but rather while he was using the three-wheeler for recreational purposes. Thus, Home Mutual argues, the license was no longer available to Thalman and the accident occurred on land not covered under the policy.

Thalman argues that the proper focus for inquiry is not whether the implied license was in effect in a given instance but rather whether the threshold requirement for coverage under paragraph 9(b) has been met—namely, whether Thalman acquired additional premises during the term of the policy with the intent to use such premises as a farm. He reasons that there is nothing in the policy that suggests premises acquired as part of the farm become non-premises if the activities of the insured change from moment to moment. Once the dirt road became part of premises acquired by him in order to conduct an integral part of his farming operation, the fact that his son was not engaged in farm labor at the time of the accident should not change the nature of the license or his

---

**1.** Since we have determined that the accident did not occur "away from the insured premises", we need not address the question of whether the Honda ATC as used by the Thalmans in their farming operation was also considered a recreational land motor vehicle within the meaning of exclusion (c).

entitlement to coverage. The issue then becomes one of policy interpretation.

Insurance policies are similar to other contracts; they are matters of agreement by the parties and the function of this court is to determine what the agreement was and enforce it. *Fillmore v. Iowa National Mutual Insurance Co.*, 344 N.W.2d 875, 877 (Minn.Ct.App.1984). If the terms of the policy are plain and unambiguous, their plain meaning should be given effect. *Gabrelcik v. National Indemnity Co.*, 269 Minn. 445, 447, 131 N.W.2d 534, 536 (1964). When a policy contains an ambiguity, it is construed in favor of the insured and against the insurer. *Farmers & Merchants State Bank v. St. Paul Fire & Marine Insurance Co.*, 309 Minn. 14, 17–18, 242 N.W.2d 840, 842–43 (1976).

The insurance policy here is not as complete as it could be. It does not define the words "premises" or "acquired" as included in the definition given for the term "insured premises." Nor does it distinguish among different interests in property. Without further guidance from the policy itself both words may reasonably be subject to several interpretations and, in fact, several do exist. For example, "acquired" as defined in *Webster's Unabridged Dictionary* means "to get or gain by one's own efforts or actions." *Webster's Unabridged Dictionary* 18 (Deluxe 2d ed.1983). It can be fairly stated that Thalman gained by his own actions access to the dirt road located on Dreyer's property. The record indicates that the dirt road was created by Thalman dragging irrigation equipment between both his and Dreyer's property. Since creation of the road in 1972 Thalman has consistently used the road to inspect and maintain the irrigation equipment, a task important to not only his farming operation, but also that of his neighbor Dreyer who paid Thalman five thousand dollars each year to run the system.

Related provisions contained in other farm liability policies indicate that the term "premises" can be limited quite easily to certain types of property interests.

In *Farm Bureau Mutual Insurance Co. v. Weber*, 310 Minn. 52, 245 N.W.2d 238 (Minn.1976), the Minnesota Supreme Court considered a "insured premises" exclusion similar to that used by Home Mutual in its farm liability policy issued to Thalman. In *Farm Mutual*, the liability policy contained the following definition:

5. "Premises" means

(a) premises identified in the Declarations including private approaches to such premises, but excepting business property.

(b) other farm premises or residence premises which the named insured, *as owner or tenant, acquires* while this policy is in force * * *.

*Id.* at 58, 245 N.W.2d at 242 (emphasis added).

In *Farm Mutual*, it is explicitly clear from the policy itself that "premises" includes only that property which the insured acquires either by purchase or as a lessee. In the present case a similar clarification has not been made.

The policy's failure to further define the words "premises" or "acquired" creates an ambiguity in the term "insured premises." It is simply not clear from the plain meaning of the definition given for insured premises that the dirt road where the accident occurred was not property acquired by Thalman as part of his farming operation.

Home Mutual cites two cases involving farm liability policies with similar exclusionary clauses for accidents occurring away from the "farm premises". See *Farm Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104 (Iowa 1981); *Connolly v. Standard Casualty Co.*, 76 S.D. 95, 73 N.W.2d 119 (1955). Neither case is applicable to the situation presented here. Although the exclusionary clauses in each case are similar to that contained in Thalman's policy, the policy language employed to trigger the exclusionary clause is completely different. Furthermore, in each case the accident occurred on a public, not private, road when the farmers were trans-

porting materials between insured farm premises.

The trial court found that the policy exclusions relating to use of a recreational motor vehicle off the premises are also inapplicable under the doctrine of reasonable expectations. Since we have already determined that coverage does exist for the accident because of an ambiguity in the policy, we need not address this alternative grounds for coverage.

## DECISION

Affirmed.